ALCAN ELECTRIC and Royal Insurance Company, Appellants and Cross–Appellees,

v.

Skipp A. BRINGMANN, Appellee and Cross–Appellant.

No. 3829.

Supreme Court of Alaska.

April 10, 1992.

Meredith A. Ahearn, Hagans, Brown, Gibbs & Moran, Anchorage, for appellants and cross-appellees.

Chancy Croft, Chancy Croft Law Office, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

I. INTRODUCTION

This is an appeal from the superior court's reversal of a decision by the Alaska Workers' Compensation Board which denied Skipp Bringmann reimbursement for transportation expenses incurred in obtaining medical treatment in California. Bringmann's cross-appeal concerns the superior court's affirmance of the Board's choice of date for retroactive application of temporary total disability compensation based on Bringmann's status as a journeyman electrician.

II. FACTS AND PROCEEDINGS

While working as an apprentice electrician for Alcan Electrical & Engineering Co. (Alcan) in November 1987, Skipp Bringmann fell approximately twenty-five feet from a ladder and sustained serious injury to his feet. Bringmann applied for workers' compensation benefits and was awarded temporary total disability benefits. The compensation amount was based on his status as an apprentice electrician at the time of his accident.

Initially, Bringmann was treated by Dr. Declan Nolan, an Anchorage orthopedic surgeon. Dr. Nolan's prescribed course of treatment for Bringmann was to wait about a year and if the bones had not naturally fused, he would then perform a "triple arthrodesis." [1] While the triple arthrodesis would reduce Bringmann's pain, it would also eliminate most of the motion in his lower ankle.

Unsatisfied with Dr. Nolan's proposed course of treatment, Bringmann consulted doctors in Hawaii and Washington, who agreed with Dr. Nolan's recommendations. Finally, Bringmann consulted Dr. Bryan Kerns, a licensed podiatrist in Huntington Beach, California, who recommended an operation involving a combination of several procedures which would alleviate the pain and allow a greater range of motion.

On April 26, 1988, Dr. Kerns, employing six different procedures, operated on Bringmann's left foot for approximately five hours. Bringmann testified that the surgery was very successful in reducing his pain and increasing his mobility. While some of the procedures performed by Dr. Kerns were normally simple when performed individually, Dr. Kerns testified that, under the circumstances, the procedures performed upon Bringmann were "extremely complicated." Although there is no evidence that Dr. Nolan considered performing such combination of procedures on Bringmann, he testified that he could have performed each of the procedures individually.

In March 1988, Bringmann was found to have worked the requisite 8,000 hours as an apprentice electrician and was certified to take the journeyman electrician's licensing examination. Although Bringmann could have taken the examination earlier, he did not take the examination until September 1, 1988. Despite the delay in taking the journeyman examination, Bringmann claimed that he was entitled to an increased rate of compensation based on a journeyman electrician's status as of March 16, 1988, the date on which he was eligible to take the examination.

The Workers' Compensation Board (Board) held a hearing on the issues of the compensability of transportation costs to California and the rate of compensation. The Board denied Bringmann's request for reimbursement of his transportation costs associated with the medical treatment he received in California finding that "there were adequate medical treatment facilities available in Anchorage to treat Employee's medical problems." The Board also concluded that the increased compensation rate was retroactive to September 1, 1988,

---

1. A triple arthrodesis is a surgical procedure whereby two major joints, the calcaneal joint and the midtarsal joint, of the foot are fused.

the date Bringmann passed his journeyman electrician's licensing examination.

On June 28, 1990, the superior court affirmed the Board's conclusion that the increased compensation rate was retroactive to September 1, 1988, and reversed the Board's denial of transportation costs associated with the medical treatment Bringmann received in California. Both Alcan and Bringmann appeal.

## III. DISCUSSION

### A. Transportation Costs

Alcan argues that the superior court erred when it reversed the Board and ordered reimbursement for the transportation costs that Bringmann incurred in obtaining medical treatment in California.[2] Alaska Statute 23.30.095(a) requires employers to furnish medical and surgical treatment to an employee injured on the job for two years after injury. Relying on the language of AS 23.30.265(20), which provides that " 'medical and related benefits' includes ... transportation charges to the nearest point where adequate medical facilities are available," Alcan asserts that Bringmann failed to demonstrate that adequate treatment was not available in Alaska. Bringmann responds that only Dr. Kerns considered and recommended the surgery that he successfully performed. He also argues that the Board failed to apply the presumption of compensability under AS 23.30.120(a)(1).

The Board placed the burden of proof on Bringmann to show that the location of the medical facility he chose was the nearest adequate medical facility. The Board further stated that "[e]ven if the statutory presumption found [in] AS 23.30.120 was stretched beyond logic and reason to include an issue such as this, Defendants have produced substantial evidence (via Dr. Nolan) to rebut the presumption." The Board found that Dr. Nolan or other skilled orthopedic surgeons could have performed the surgery and therefore adequate medical facilities were available in Anchorage.

The superior court reversed the Board, reasoning:

the board did not find that Dr. Nolan gave consideration to this particular combination of surgical procedures as an alternative to fusion, and the Board did not find that Dr. Nolan provided Bringmann with this option....

... What is crucial is that Dr. Kerns' [sic] proposed a new standard for what is "adequate" in treating a crushed foot which Bringmann could not find in Anchorage, Honolulu or Seattle.

The legislature amended Alaska Statutes 23.30.095(a) in 1988, deleting the requirement that the injured employee first designate a licensed physician "in the state." This amendment shows that the legislature intended to drop the parochial view that adequate treatment is always available in this state.

■ At oral argument, Bringmann correctly relied on *Olson v. AIC/Martin J.V.,* 818 P.2d 669, 675 (Alaska 1991), for the proposition that "the presumption of compensability applies to continuing medical care." Bringmann's transportation expenses to California for treatment were clearly part of his ongoing medical care. Thus we hold that the Board erred in failing to apply the presumption of compensability to Bringmann's transportation costs.

■ Alcan concedes that an employee is entitled to out of state medical treatment when equally beneficial treatment is not available in the employee's home state. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 61.13(b)(2) (1989). Alcan relies on *Braewood Convalescent Hospital v. Worker's Compensation Appeals Board,* 34 Cal.3d 159, 193 Cal.Rptr. 157, 666 P.2d 14 (1983), which held that "the employer must present evidence demonstrating the availability of a similar, or equally effective program in a more limited geographic area closer to [the injured worker's] domicile." *Id.* 193 Cal.Rptr. at 163, 666 P.2d at 20. Alcan argues that it

2. The standard of review for questions of statutory interpretation that do not involve board expertise is the substitution of judgment standard. *Phillips v. Houston Contracting, Inc.,* 732 P.2d 544, 547 (Alaska 1987).

demonstrated the availability of a similar, or equally effective program in Alaska. Bringmann responds that although Dr. Nolan was capable of performing the individual procedures, Dr. Nolan did not actually consider and recommend to him the combination of procedures required to treat his injury.

█ We agree with Bringmann that the combination of procedures performed by Dr. Kerns was not available in Alaska.[3] Dr. Nolan did not provide Bringmann with an alternative to a triple arthrodesis. There is no evidence to suggest that Dr. Nolan considered the combination of the six procedures that Dr. Kerns performed on Bringmann, although he testified he could have performed each of the procedures individually. Furthermore, Alcan presented no evidence that any other doctor in Alaska considered or recommended that combination of surgical procedures. Similarly, the doctors Bringmann consulted in Hawaii and Washington did not consider or recommend that combination of surgical procedures. If a doctor does not provide an option to the patient, regardless of the doctor's skill level, the option is unavailable to that patient. Alcan has failed to demonstrate that "adequate medical facilities" were available within the state. Bringmann's evidence, together with the unrebutted presumption, satisfied his burden of proof that adequate medical treatment was unavailable in Alaska. Therefore, we affirm the superior court's decision requiring reimbursement by Alcan of Bringmann's transportation expenses incurred in obtaining medical treatment in Huntington Beach, California.

**3.** Dr. Kerns recommended and performed the following six procedures:
1. Radical decompression of posterior tibial nerve, left foot.
2. Tendo–Achilles lengthening, left foot.
3. Release and reconstruction of the peroneal tendon and sheath with decompression sural nerve, left foot.
4. Decompression osteotomy of the calcaneus with internal screw fixation, left foot.
5. Insertion of Jackson Pratt closed suction drainage system, left foot.

## B. Retroactive Compensation

█ Bringmann contends that the Board erred by refusing to retroactively apply the journeyman electrician's compensation as of March 16, 1988, the date he became eligible to take the journeyman electrician's examination. He relies on AS 23.30.-220(a)(3) for the proposition that the Board may consider the fact that an apprentice electrician would have received a wage increase absent an injury.[4] According to Bringmann, the Board erroneously relied "on actual post injury occurrences rather than a determination of what would have been likely absent an injury." Alcan responds that there is substantial evidence to support the Board's finding that "Bringmann's injury did not prevent him from qualifying as a journeyman before September 1, 1988," the date he passed the examination.

We will affirm the Board's decision if it is based on substantial evidence. *Black v. Universal Servs., Inc.*, 627 P.2d 1073, 1075 (Alaska 1981). Finding that the increased rate of compensation was effective on September 1, 1988, the Board stated,

> [t]here are two requirements to become a journeyman wireman, and Employee did not complete both requirements until September 1, 1988 when he passed the written test. We are not persuaded by Employee's excuses for not taking the test sooner than he did. Besides, Employee admitted he could have studied two or three hours per day despite his initial dim employment outlook and the medications he was taking.... We find no persuasive evidence that this status would have been attained sooner.

(Footnote omitted).

Affirming the board, the superior court summarized the evidence as follows:

> 6. Application of posterior splint, left leg.

**4.** AS 23.30.220(a)(3) provides:
> if an employee when injured is a minor, an apprentice, or a trainee in a formal training program, as determined by the board, whose wages under normal conditions would increase during the period of disability, the projected increase may be considered by the board in computing the gross weekly earnings of the employee[.]

Bringmann himself testified that the examination required 40 hours of study and that he was capable of two to three hours of study per day in spite of his injury. Tr. at 34. Bringmann also testified that he vacationed on the Island of Maui for the month of January. Tr. at 45. Had Bringmann chosen, he could have studied two to three hours a day while he was on vacation and adequately prepared to take the examination in March.

(Citations in original).[5] Since there is substantial evidence in the record to support the Board's decision to retroactively grant the agreed compensation rate increase only to September 1, 1988, we affirm this portion of the superior court's decision affirming the Board's disposition of this issue.

The decision of the superior court is AFFIRMED.

5. Bringmann stated, "[the examination] requires a considerable amount of study.... I probably put in ... 40 quality hours of studying. At the time ... I first was accredited the hours I don't think I could have got in maybe—maybe two or three hours of quality studying ... a day."