DAVID CUMMINGS *v.* TWIN MANUFACTURING,
INC., ET AL.
(10625)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued June 10—decision released September 22, 1992

*William C. Brown,* for the appellants-appellees (defendants).

*Dean B. Kilbourne,* for the appellee-appellant (plaintiff).

NORCOTT, J. The defendants[1] appeal and the plaintiff cross appeals from the decision of the compensation review division of the workers' compensation commission dismissing their appeals concerning the commissioner's finding and award.

The defendants appeal from the review division's affirmance of the commissioner's decision to order out of state medical treatment for the plaintiff without first conducting a hearing. The plaintiff's objections concern the finding that he attained maximum medical improve-

---

[1] The defendants are Twin Manufacturing, Inc., the plaintiff's employer, and Frank B. Hall Risk Management, Inc., the insurer.

ment in 1986, but became totally disabled again in November, 1989. We affirm the review division's dismissal of the plaintiff's appeal, and reverse its decision dismissing the defendants' appeal.

The record discloses that during the course of his employment with the defendant Twin Manufacturing, Inc., the plaintiff suffered a traumatic brain injury in 1984 and was paid 156 weeks of permanent partial disability benefits between November, 1986, to November, 1989. In his finding and award of May 14, 1990, the commissioner found that the plaintiff had reached maximum medical improvement on October 30, 1986, but became totally disabled again on November 6, 1989. The commissioner ordered the defendants to provide the plaintiff with up to one year of in-patient hospitalization or treatment at a facility in Connecticut that treats traumatic brain injuries.

In May, 1990, the plaintiff filed a petition for review and reasons for appeal, contesting the finding that he had reached maximum medical improvement on October 30, 1986. In July, 1990, he moved to correct the commissioner's finding, seeking permission to be treated outside Connecticut. Attached to his motion was a letter addressed to the commissioner from the Connecticut Traumatic Brain Injury Association, which indicated that appropriate facilities necessary to treat the plaintiff do not exist in Connecticut. The letter also contained a list of facilities that provide such treatment. The defendants objected to the plaintiff's motion, and in October, 1990, the commissioner granted the motion without a hearing.[2] The defendants then filed a petition for review, a request to submit additional evidence and reasons for appeal.

---

[2] In granting the motion, the trial commissioner wrote: "Said Motion is hereby Granted, and paragraph 3, page 6 of the Commissioner's Finding and Award dated May 14, 1990 is modified so that the respondent shall

In November, 1990, the state's Second Injury and Compensation Assurance Fund sent a memorandum to the commissioner, requesting that he add an addendum to his finding, stating that he authorized treatment "at a facility approved and recommended by the Second Injury Fund." The commissioner granted this request conditioned on its approval by the plaintiff and his counsel.[3] The defendants again filed a petition for review, a request to submit additional evidence and reasons for appeal. On August 29, 1991, the compensation review division dismissed both the plaintiff's and the defendants' appeals. In its memorandum of decision, the review division determined that no further hearing was required on the plaintiff's request for out of state treatment because a full hearing had been conducted before the commissioner issued his May 14, 1990 finding and award. The review division also determined that the commissioner's ruling was proper because General Statutes § 31-294 permits him to order such changes. This appeal followed.

The defendants claim the commissioner improvidently granted the plaintiff's motion to correct for several reasons. They contend that (1) the plaintiff lost his right to receive benefits, pursuant to General Statutes § 31-305, when he did not attend independent medical evaluations, (2) the proposed treatment was to occur in a nonmedical facility in violation of General Statutes § 31-294,[4] (3) the commissioner lacks authority to order

provide Claimant with up to one year of in-patient hospitalization at New Medico Highwatch Rehabilitation Center, P.O. Box 99, Center Ossipee, New Hampshire."

[3] Our review of the record fails to disclose, and the parties in their briefs do not identify, any document in which the plaintiff and his counsel agreed to the fund's request.

[4] General Statutes § 31-294 (c) provides in pertinent part: "The employer, as soon as he has knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service, including medical rehabilitation services, as such physician or surgeon deems rea-

medical treatment out of state, (4) there was no evidence that the treatment to be rendered was for any compensable injury, and (5) no evidentiary hearing was conducted at which the defendants could challenge the report of the brain injury association. We agree with the defendants' fifth reason.

I

At the outset, we note that, although General Statutes § 31-294 permits a compensation commissioner to order a change in medical providers, it is silent as to whether this encompasses care outside Connecticut.

sonable or necessary. Such physician or surgeon shall be selected by the employee from an approved list of physicians and surgeons prepared by the commissioners, but, if such employee is unable to make the selection, the employer shall do so, subject to ratification by the employee or his next of kin, provided, however, where the employer has a full-time staff physician or a physician is available on call, the initial treatment required immediately following the injury may be rendered by such physician, but the employee may thereafter select his own physician as provided by this chapter for any further treatment without prior approval of the commissioner. In the event of the failure of the employer promptly to provide such physician or surgeon or such medical, surgical or hospital or nursing service, the injured employee may provide such physician or surgeon, selected from the approved list prepared by the commissioners, or such medical, surgical or hospital or nursing service at the expense of the employer; or, at his option, the injured employee may refuse the medical, surgical and hospital or nursing service provided by his employer and provide the same at his own expense. The commissioner may, without hearing, at the request of the employer or the injured employee, when good reason exists, or on his own motion, authorize or direct a change of such physician or surgeon or such hospital or nursing service. If it appears to the commissioner that an injured employee has refused to accept and failed to provide such reasonable medical, surgical or hospital or nursing service, all rights of compensation under the provisions of this chapter shall be suspended during such refusal and failure. . . ."

General Statutes § 31-294 was repealed by Public Acts 1991, No. 91-32, § 40, effective July 1, 1991, and recodified in Public Acts 1991, No. 91-32. The above mentioned language has been reenacted and codified in Public Acts 1991, No. 91-32, § 12. The legislature's action does not affect the appeals here. See *Hansen* v. *Gordon*, 221 Conn. 29, 32–33 n.1, 602 A.2d 560 (1992).

Although our appellate courts have yet to construe this portion of the statute, we conclude that a compensation commissioner is not prohibited from ordering out of state care when equally beneficial treatment is unavailable in Connecticut.

We commence our analysis with settled principles of statutory construction designed to ascertain and give effect to the apparent intent of the legislature. *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 225, 602 A.2d 1019 (1992). When a statute's words are plain and unambiguous, we look no further for interpretive guidance because we assume the words themselves express the legislature's intent. *Norwich* v. *Housing Authority,* 216 Conn. 112, 117–18, 579 A.2d 50 (1990). "That axiom only applies in full force, however, '[w]here . . . the language of a statute is . . . *absolutely* clear' on its face and where no ambiguity is raised in applying the statute in a particular case." (Emphasis in original.) *Rose* v. *Freedom of Information Commission,* supra, quoting *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 692, 595 A.2d 313 (1991).

By contrast, when we are confronted with ambiguity in a statute, " 'we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 756, 601 A.2d 1005 (1992), quoting *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987). In any event, "we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible. . . . [C]ommon sense must be used,

and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citations omitted; internal quotation marks omitted.) *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 157–58, 601 A.2d 1005 (1992).

In this case, the statute is not absolutely clear about whether a compensation commissioner can order treatment outside Connecticut. Rather, General Statutes § 31-294 provides, inter alia, that the employer "shall provide a competent physician or surgeon," and "shall furnish such medical and surgical aid or hospital or nursing service, including medical rehabilitation services, as such physician or surgeon deems reasonable or necessary." The statute also provides that such physician or surgeon is to be selected from an approved list of such health care providers. See also General Statutes § 31-279.[5] Further, the physician chosen must be licensed to practice in Connecticut. See General Statutes § 31-275 (9).[6]

Because our review of the legislative history fails to yield insight into the legislature's intent regarding whether treatment outside Connecticut may be ordered, we look to the policy the statute was designed to implement, and to its relationship to existing legislation and common law principles applicable to the law of workers' compensation. See *United Illuminating Co.* v. *Groppo*, supra.

---

[5] General Statutes § 31-279 provides in pertinent part that the compensation commissioners "shall maintain an approved list of practicing physicians, surgeons, podiatrists and dentists from which an injured employee shall choose for examination and treatment under the provisions of this chapter. . . ."

[6] General Statutes § 31-275 (9) provides: " 'Physician' shall include any person licensed and authorized to practice a healing art as defined in section 20-1 and duly licensed under the provisions of chapters 370, 371, 372 and 373 to practice in this state."

It is well settled that the legislature's longstanding policy has been that our Workers' Compensation Act, General Statutes § 31-275 et seq., is remedial in nature and "should be broadly construed to accomplish its humanitarian purpose." (Internal quotation marks omitted.) *Hansen* v. *Gordon*, 221 Conn. 29, 32, 602 A.2d 560 (1992). At least since 1932, the compensation review division has construed General Statutes § 31-294 and its predecessors to permit out of state treatment when "there is good reason, such as the need for a specialized type of treatment"; J. Asselin, Connecticut Workers' Compensation Practice Manual (1985), p. 183 n.329, citing *Dufresne* v. *Sears, Roebuck & Co.,* 9 Conn. Comp. Dec. 450 (1932); or under other "proper circumstances, as when a claimant in 'a sparsely populated Connecticut area seeks medical attention in a nearby metropolitan community across the border . . .' ." J. Asselin, Connecticut Workers' Compensation Practice Manual (1988 Sup.), p. 179 n.320, quoting *Veillette* v. *State,* 3 Conn. Workers' Comp. Rev. Op. 135 (1987); see also *Caldwell* v. *United States Aluminum Co.,* 131 Conn. 96, 38 A.2d 6 (1944) (upholding commissioner's award of costs for medical care when employer failed to respond to nonresident claimant's request for authorization of out of state treatment).

Although the legislature recently amended the Workers' Compensation Act; Public Acts 1991, Nos. 91-32 and 91-339; it did not disturb the review division's construction of General Statutes § 31-294 permitting medical care out of state. "[T]he inference of legislative concurrence with the [review division's] interpretation [is] to be drawn from legislative silence concerning that interpretation, especially where the legislature makes unrelated amendments in the same statute." (Internal quotation marks omitted.) *Hansen* v. *Gordon,* supra, 36. We conclude that under the circumstances of this case, the review division correctly determined that a

compensation commissioner may order treatment outside Connecticut. This comports with the remedial nature of our workers' compensation statutes; id., 32; and constitutes a reasonable and rational result, in accordance with the well established principle that statutes are to be construed with common sense and read as a whole so as to reconcile all their parts as far as possible.[7] See *West Haven* v. *Hartford Ins. Co.,* supra.

Courts in numerous other jurisdictions have reached this same conclusion. See, e.g., *Alcan Electrical & Engineering Co.* v. *Bringmann,* 829 P.2d 1187, 1189 (Alaska 1992); *Braewood Convalescent Hospital* v. *W.C.A.B.,* 34 Cal. 3d 159, 168, 666 P.2d 14, 193 Cal. Rptr. 157 (1983); *Lindsey* v. *J.R. & R. Enterprises,* 575 So. 2d 1296, 1298 (Fla. App. 1990); *Chaples* v. *Gilco, Inc.,* 280 A.2d 546, 548 (Me. 1971); *R.C. Petroleum, Inc.* v. *Hernandez,* 555 So. 2d 1017, 1022–23 (Miss. 1990); *Reynaga* v. *Northwest Farm Bureau,* 300 Or. 255, 262, 709 P.2d 1071 (1985); *Roadway Express, Inc.* v. *W.C.A.B. (OSTIR),* 520 A.2d 1261, 1263 (Pa. Comm. 1987); *Ward* v. *Dixie Shirt Co.,* 223 S.C. 448, 459, 76 S.E.2d 605 (1953); see also *McAree* v. *Gerber Products Co.,* 342 A.2d 608, 612 (R.I. 1975) (out of state treatment not prohibited by Rhode Island law).

---

[7] This reasoning also leads ineluctably to the conclusion that treatment outside Connecticut may be proper when the claimant is referred to an out of state health care provider. See *Pokorny* v. *Getta's Garage,* 219 Conn. 439, 456, 594 A.2d 446 (1991). General Statutes § 31-294 " 'clearly places responsibility on the employer to furnish all necessary medical and rehabilitative services. By statute, this includes not only the furnishing of a physician to attend the injured employee, but also whatever medical treatment or diagnostic procedures such physician deems reasonable or necessary. Thus, the employer is responsible not only for the initial treating physician, but also for *any other physician, hospital, diagnostic or treatment center to which such treating physician refers the claimant . . .*' " (Emphasis added.) Id., citing J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 178. See also *Chaples* v. *Gilco, Inc.,* 280 A.2d 546, 548 (Me. 1971) (medical services rendered by out of state physician not licensed in Maine not improper when in state physician on panel selected to provide care by Maine Industrial Accident Commission referred claimant to out of state physician).

In discussing why treatment out of state is not prohibited by statutory law, the Supreme Court of Rhode Island stated that its compensation statutes are designed to help "those who are 'casualties of the modern industrial world' . . . [which] is characterized by increased mobility and the destruction of artificial boundaries between countries as well as states. While the state is still recognized as a sovereign entity, capable of regulating within its borders, we must not ignore that the modern technological world, in particular the medical world, recognizes no such boundaries. Certain areas, such as Boston and New York, have become centers for medical research and advanced treatment techniques. Some hospitals or clinics have developed expertise in specific fields of research unmatched by any other in the country. This is not to disparage the quality of medical care available within the boundaries of our state, but merely to recognize that the increasingly specialized and technologically complex practice of medicine requires extensive capital investment and specially trained staffs which it would be economically unfeasible and wasteful to duplicate within any one geographical area." *McAree* v. *Gerber Products Co.,* supra, 613.

We agree with the Rhode Island court's reasoning in *McAree.* In an age of medical specialization in which technology is advancing at a pace almost beyond our ability to comprehend, any blanket prohibition against treatment out of state for Connecticut compensation claimants would constitute an unwise "parochial view that adequate treatment is always available in this state." *Alcan Electrical & Engineering Co.* v. *Bringmann,* supra.

## II

Next, we must determine if an evidentiary hearing is required before a compensation commissioner can

order medical care out of state. We conclude that such a hearing is required.

General Statutes § 31-294 provides in pertinent part that "[t]he commissioner may, without hearing, at the request of the employer or the injured employee, when good reason exists, or on his own motion, authorize or direct a change" in medical providers. Although our appellate courts have yet to construe this portion of the statute, judicial construction of other portions of the statute has repeatedly found that what is required or permitted must be reasonable. See, e.g., *Collins* v. *West Haven,* 210 Conn. 423, 429, 555 A.2d 981 (1989) (notice of claim to apprise city of request for heart and hypertension benefits); *Pagliarulo* v. *Bridgeport Machines, Inc.,* 20 Conn. App. 154, 158, 565 A.2d 8 (1989) (medical care); see also *Pokorny* v. *Getta's Garage,* 219 Conn. 439, 455–57, 594 A.2d 446 (1991) (double recovery of medical costs not permitted).

Under the circumstances of this case, we believe that the same reasonableness requirement applies when a compensation commissioner orders out of state treatment. See J. Asselin, Connecticut Workers' Compensation Practice Manual, supra, pp. 182–83 ("medical treatment furnished by the employer must be reasonably accessible to the employee"). In this context, the reasonableness and necessity of such care hinges on whether equally beneficial treatment is available in Connecticut. See 2 A. Larson, Workmen's Compensation Law (1989) § 61.13 (b) (2), pp. 937–41. In order to resolve this question of fact, we believe it is proper for the commissioner first to conduct an evidentiary hearing. See J. Asselin, Connecticut Workers' Compensation Manual, supra, p. 180.[8]

---

[8] The leading Connecticut commentator on the law of workers' compensation recognizes that despite the language of General Statutes § 31-294, in certain circumstances a hearing may be appropriate. See J. Asselin, Connecticut Workers' Compensation Practice Manual (1985), p. 180. "If the claimant desires to change physicians, he should make such a request, in writing, to the commissioner having jurisdiction over the claim. The request

Although our independent research fails to disclose other cases with precisely the facts we confront today, courts in other jurisdictions rely on the trier of fact to determine, after an evidentiary hearing, the reasonableness and necessity of treatment out of state for compensation claimants. See, e.g., *Alcan Electrical & Engineering Co.* v. *Bringmann,* supra; *Braewood Convalescent Hospital* v. *W.C.A.B.,* supra, 166–67; *Lindsey* v. *J.R. & R. Enterprises,* supra; *Menard* v. *Royal Ins. Co.,* 498 So. 2d 1164, 1165–66 (La. App. 1986); *R.C. Petroleum, Inc.* v. *Hernandez,* supra, 1019; *Spann* v. *General Motors Corporation,* 813 P.2d 541, 544 (Okla. App. 1991); *McAree* v. *Gerber Products Co.,* supra, 612. We are persuaded that this is the proper approach and therefore conclude that on remand, the commissioner should conduct an evidentiary hearing as to whether treatment out of state is reasonable and necessary in light of whether equally beneficial treatment is unavailable in Connecticut.

Although a commissioner may order out of state treatment in appropriate circumstances, our holding is not to be interpreted as meaning that such treatment must be ordered in all circumstances. We reiterate that such treatment should be reasonable and necessary, and permitted only when equally beneficial treatment is unavailable in Connecticut. Thus, it follows that the commissioner need not always find that the proposed treatment is reasonable. See *Pagliarulo* v. *Bridgeport Machines, Inc.,* supra, 159. In some circumstances, what constitutes reasonableness may require expert testimony to ascertain. Whether to accept or reject such

---

should identify the physician the claimant desires to be authorized and the reasons for the request. Ordinarily, the commissioner will authorize such a change as long as there is no indication that the claimant is 'shopping around' for a more sympathetic physician. Experience indicates that should the respondent object, a formal hearing to establish that a 'good reason exists' may well be convened despite the language of the Act." Id.

testimony is a matter for the commissioner to determine, which will be afforded great deference by reviewing courts. Id.

Finally, we are mindful of the various concerns related to health care provided outside Connecticut. Although a compensation commissioner would be unable to subpoena physicians and documents[9] not within his jurisdiction, we believe such situations can be remedied adequately. See *Reynaga* v. *Northwest Farm Bureau,* supra, 259 ("[a]ny state concern for availability of reports and testimony from out-of-state medical service providers would be satisfied by granting insurers a right to veto individual doctors who have demonstrated that they are unlikely to fully cooperate with reporting requirements"). Similarly, we are confident that commissioners also will ensure that no undue financial hardship inures to employers or insurers as a result of expenses claimants might incur in traveling to and from treatment out of state. See *Chaples* v. *Gilco, Inc.,* supra; *Ward* v. *Dixie Shirt Co.,* supra.

Concerning the plaintiff's cross appeal, our review of the record discloses that the compensation review division properly denied the motion to correct the trial commissioner's findings because the commissioner is the trier of the facts; *Kinney* v. *State,* 213 Conn. 54, 59, 566 A.2d 670 (1989); *McCurdy* v. *State,* 26 Conn. App. 466, 469, 601 A.2d 560 (1992); and the conclusions he reaches must stand unless they result from an incorrect application of the law or from an inference illegally drawn from facts he found. Id. In this case, the commissioner found that "Dr. Dean Hokanson testified that the [plaintiff] had reached max-

---

[9] General Statutes §§ 31-278 and 31-298 permit the trial commissioner to subpoena witnesses, including physicians, and medical records.

imum medical improvement."[10] We therefore conclude that the evidence supported the commissioner's finding.

The decision of the compensation review division dismissing the plaintiff's appeal is affirmed. The decision dismissing the defendants' appeal is reversed and the case is remanded to the compensation review division with direction to remand the matter to the workers' compensation commissioner for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[10] "Maximum medical improvement is that time when there is no reasonable prognosis for complete or partial cure and no improvement in the physical condition or appearance of the injured body member can be reasonably made." *Cappellino* v. *Cheshire,* 27 Conn. App. 699, 703 n.2, 608 A.2d 1185 (1992).