### SAGAMORE GROUP, INC. *v.* COMMISSIONER OF TRANSPORTATION
### (10799)

FOTI, LANDAU and FREEDMAN, Js.

---

Argued June 8—decision released September 22, 1992

*Martin A. Clayman,* for the appellant (plaintiff).

*George E. Finlayson,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

FREEDMAN, J. The plaintiff appeals from the judgment of the trial court dismissing the plaintiff's complaint for lack of subject matter jurisdiction. The plaintiff claims that the trial court improperly (1) refused to permit the plaintiff to present expert testimony at the hearing on the defendant's motion to dismiss, (2) determined that the contract between the plaintiff and the defendant did not provide for "construction management" services for purposes of Gen-

eral Statutes § 4-61 (a) and thus that there was no waiver of sovereign immunity, and (3) determined that the statute of limitations contained in General Statutes § 4-61 (a) applied to the plaintiff's cause of action and precluded it from maintaining the action. We affirm the judgment of the trial court.

On December 30, 1985, the plaintiff and the defendant entered into a contract for services. Under the contract, the plaintiff was to provide consulting and supportive services as specified in the contract, on behalf of the defendant, to disadvantaged business enterprises and women's business enterprises (the enterprises) doing work on Connecticut department of transportation (DOT) projects. The contract provided that the defendant was to pay the plaintiff on an hourly basis for services rendered, with a maximum project cost of $881,400.

After the contract was executed, the plaintiff began providing the contract services on behalf of the defendant. The services included assisting the enterprises in obtaining certification and recertification for contracts with the DOT, reviewing all DOT contracts for contracting opportunities for the enterprises, making on-site visits to monitor the enterprises' job progress and various details relating to their job performance, and serving several other functions related to the enterprises in their dealings and relationships with the DOT.

The plaintiff submitted bills totaling $153,184.20 to the defendant for services rendered. The defendant, however, paid only $95,013.20 for the services, leaving an unpaid balance of $58,171. The unpaid balance represented fees for services billed by the plaintiff, the validity of which was disputed by the defendant. The defendant did not issue a certificate of acceptance for any of the work performed by the plaintiff.

In March, 1987, the defendant suspended the plaintiff's performance of services under the contract pending an audit of the plaintiff's books and records of account. The defendant refused to pay the plaintiff the balance due for the services previously rendered under the contract. On June 3, 1987, the plaintiff notified the defendant by letter that it protested the suspension and notified the defendant of its intention to sue for a breach of contract. On September 25, 1987, the defendant terminated the contract between the parties. The plaintiff commenced this action on April 19, 1991, three and one-half years after the formal termination, claiming the unpaid balance due under the contract for the work performed before the suspension.

The defendant moved to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. In its motion, the defendant claimed that the contract at issue was not one for the provision of construction management services under General Statutes § 4-61 (a) and thus the defendant was shielded from liability under the doctrine of sovereign immunity.[1] Alternatively, the

[1] General Statutes § 4-61 (a) provides: "Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract, bring an action against the state to the superior court for the judicial district of Hartford-New Britain for the purpose of having such claims determined, provided notice of the general nature of such claims shall have been given in writing to the department administering the contract not later than two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor. No action shall be brought under this subsection later than three years from the date of such acceptance of the work by the agency head as so evidenced. Acceptance of an amount offered as final payment shall not preclude any person, firm, or corporation from bringing a claim under this section. Such action shall be tried to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. Any action brought under this section shall be privileged in respect to assignment for trial upon motion of either party."

defendant claimed that even if the contract did provide for construction management services under § 4-61 (a), the plaintiff's action was barred by the statute of limitations contained in that section.

At the hearing on the defendant's motion to dismiss, the plaintiff was prepared to present expert testimony concerning the type of services it performed under the contract and whether those services were construction management services for purposes of § 4-61 (a). The plaintiff requested an opportunity to offer such expert testimony, but the trial court refused its request.

In its memorandum of decision, the trial court concluded that the contract between the parties did not call for the provision of construction management services by the plaintiff to the defendant. In reaching this conclusion, the trial court specifically stated: "The contract does not call for the plaintiff to supervise actual construction, to manage the building process, or to perform on state projects any construction or management duties. As a consequence, this court concludes the contract does not provide for 'construction management' services within the meaning of § 4-61 (a). See K.M. Cushman, Construction Litigation (1981) pp. 329–335." The trial court also concluded, in the alternative, that even if the contract called for construction management services within the meaning of § 4-61 (a), the plaintiff's action was barred by that section's statute of limitations.

The plaintiff's primary claim on appeal is that the trial court improperly determined that the contract was not one for construction management services within the meaning of § 4-61 (a) and, therefore, the trial court improperly dismissed the action for lack of subject matter jurisdiction because the action was barred by the doctrine of sovereign immunity. As a preliminary matter, however, we must first address the issue of whether

the trial court properly denied the plaintiff's request to present expert testimony at the hearing on the defendant's motion to dismiss.

## I

" 'It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases'; *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 45 (1983); *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives,* 151 Conn. 259, 262–63, 196 A.2d 596 (1963); 'and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state.' *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). . . . The state legislature . . . possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities. Id." *White* v. *Burns,* 213 Conn. 307, 312, 567 A.2d 1195 (1990).

"Section 4-61 of the General Statutes is an express waiver of sovereign immunity limited to actions brought against the state pursuant to certain types of contracts involving the construction of public works between the state and other parties." *Berger, Lehman Associates, Inc.* v. *State,* 178 Conn. 352, 355, 422 A.2d 268 (1979). For purposes of the plaintiff's action, the crucial phrase in the statute is the one defining the types of contracts that come within the law's waiver: "a contract . . . for the design, construction, construction management, repair or alteration of any state highway, bridge, building or other public works of the state . . . ." General Statutes § 4-61 (a). The critical term "construction management" was added to the statute by Public Acts 1985, No. 85-113. That term is not defined in the statutes and the scant legislative history on the 1985 amendment provides us with little

guidance as to the term's meaning and interpretation. The plaintiff asserts that "construction management" includes the work described in and performed under its contract with the state, and that the state has therefore consented to be sued for a breach of that contract. We do not agree.

Practice Book § 143 permits a party to move for dismissal of an action on the basis of a lack of subject matter jurisdiction. A motion to dismiss is the appropriate procedural vehicle to raise a claim that sovereign immunity bars the action. *Wiley* v. *Lloyd,* 4 Conn. App. 447, 449, 495 A.2d 1082 (1985). "[W]hen a motion to dismiss does not seek to introduce facts outside of the record it is equivalent to our former motion to erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. *Brewster* v. *Brewster,* 152 Conn. 228, 233, 206 A.2d 106 (1964)." *American Laundry Machinery, Inc.* v. *State,* 190 Conn. 212, 217, 459 A.2d 1031 (1983). A motion to dismiss may raise issues of fact and would, therefore, require a hearing to determine the facts. *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983). Where, however, no genuine issue as to a material fact exists a hearing is not required because the motion merely presents a question of law as applied to the facts well pleaded.

The interpretation of statutes presents a question of law. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 139–40, 509 A.2d 1050 (1986). The interpretation of a contract, however, is generally a question of fact. *Gurliacci* v. *Mayer,* 218 Conn. 531, 567, 590 A.2d 914 (1991); *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987). In its motion to dismiss, the defendant did not contest any of the factual allegations contained in the plaintiff's complaint. It accepted them

as true.[2] Because the trial court was required to interpret a statute in the context of a motion to dismiss, which admits all well pleaded facts; *American Laundry Machinery, Inc.* v. *State,* supra; the trial court properly decided the motion on the record alone. *Barde* v. *Board of Trustees,* 207 Conn. 59, 62, 539 A.2d 1000 (1988).

The sole question before the trial court was the definition of construction management as contemplated in the statute, and whether the services performed by the plaintiff, as alleged in its complaint and as evidenced in the record, fit within that definition. The definition of construction management was a question of law to be determined by the court. The proposed testimony regarding this definition would have provided a legal conclusion, and a witness is incompetent to offer a legal opinion except on the issue of foreign law. *Orange Street Armory Associates, Inc.* v. *New Haven,* 17 Conn. App. 166, 173, 551 A.2d 759 (1988); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) §§ 7.12.3, 7.17.2. As for the proposed expert testimony concerning the type of services the plaintiff performed under the contract, such testimony was unnecessary because the contract clearly identified the services to be performed by the plaintiff, and the defendant did not challenge the plaintiff's claim that it performed those services. The trial court, therefore, properly refused to permit the plaintiff to present its expert testimony.

---

[2] Although the defendant contested the allegation that the services provided under the contract were construction management services, that allegation is not really an allegation of fact. "The allegations of the complaint as to the nature of the contract, which appear to claim that it is one for [construction management services], are . . . essentially legal conclusions. Practice Book §§ 108, 109. '[They are] to be tested by the facts alleged, and [add] nothing to the strength of the pleading.' *Weinstein* v. *Mutual Trust Life Ins. Co.,* 116 Conn. 654, 659, 166 A. 63 (1933); see also *Andersen* v. *Colwell,* 93 Conn. 61, 65, 104 A. 242 (1918)." *American Laundry Machinery, Inc.* v. *State,* 190 Conn. 212, 217–18, 459 A.2d 1031 (1983).

## II

We turn now to the trial court's interpretation of the term construction management. We afford plenary review to conclusions of law reached by the trial court. *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992). Generally, "[w]hen a statute's words are plain and unambiguous, we look no further for interpretive guidance because we assume the words themselves express the legislature's intent. *Norwich* v. *Housing Authority,* 216 Conn. 112, 117–18, 579 A.2d 50 (1990). That axiom only applies in full force, however, [w]here . . . the language of the statute is . . . *absolutely* clear on its face and where no ambiguity is raised in applying the statute in a particular case. (Emphasis in original.) *Rose* v. *Freedom of Information Commission,* [221 Conn. 217, 225, 602 A.2d 1019 (1992)], quoting *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 692, 595 A.2d 313 (1991). [Conversely,] when we are confronted with ambiguity in a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Cummings* v. *Twin Mfg., Inc.,* 29 Conn. App. 249, 254, 614 A.2d 857 (1992).

We must also keep in mind the general principles controlling the interpretation of statute's waiving the state's sovereign immunity. "It is well established that statutes in derogation of the state's immunity from suit should be strictly construed so that the state's sovereignty may not be undermined. *Berger, Lehman Associates, Inc.* v. *State,* [supra, 355–56]; *Spring* v. *Constantino,* 168 Conn. 563, 570–71, 362 A.2d 871

(1975); 2A Sutherland, [Statutory Construction (4th Ed. Sands 1984)] § 58.04. 'Under that rule of construction, the plaintiff must prove . . . that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, and the contractual language upon which the plaintiff depends. . . .' *Berger, Lehman Associates, Inc.* v. *State,* supra, 356." *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 188, 501 A.2d 745 (1985).

The statute and its limited legislative history regarding the legislature's use of the term "construction management" offer no guidance in ascertaining the legislature's intended meaning of the term. We therefore must look elsewhere to aid in discerning its meaning, and we may properly resort to such things as judicial opinions involving the statute, the common law, legal dictionaries and treatises to ascertain the meaning of the terms used in a statute. *Rose* v. *Locke,* 423 U.S. 48, 49–50, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *State* v. *White,* 204 Conn. 410, 416, 528 A.2d 811 (1987); *State* v. *Pickering,* 180 Conn. 54, 62–63, 428 A.2d 322 (1980).

"There is no single, widely accepted definition of construction management." D. Hapke, Jr., Design and Construction Contracts: Representing the Owner (1987), p. 58. Generally, a construction manager "performs the management and coordination functions of the general contractor. However, the construction manager also performs services during and in connection with the design phase, some of which substitute for services which would otherwise be performed by the architect (such as cost estimating), and some of which (such as analyses of construction feasibility) are in addition to, or are performed to a greater degree than, those normally undertaken by the architect." 1 S. Stein, Construction Law § 3.01 [1] [d] [i]. "[T]he essence of the concept centers around the introduction of a construction manager . . . of the entire building process. The

position is similar to that of the 'master builder' of ancient times, whose responsibilities spanned both the design and construction phases of the building process. Today, however, 'he' is more commonly a group, a company, or a partnership with two paramount characteristics: construction know-how and management ability. The construction manager assists the owner in arranging for the contractors and the architects who will actually do the work, seeing to it that their efforts are coordinated right from the very start of the design process to the final delivery of the completed facility." K. Cushman, Construction Litigation (1981), pp. 331–32, quoting E. Davis & L. White, How to Avoid Construction Headaches, 51 Harv. Bus. Rev. 87, 89–90 (March-April 1973). "The American Institute of Architects' General Conditions of the Contract for Construction, Construction Management Edition, which forms the basis of many owner-trade contractor contracts, specifies the [construction manager's] duties as including: acting as the owner's representative during construction and until the issuance of final payment, reviewing and processing all applications for payment by the contractors, rejecting work that does not conform to the contract (subject to the architects' review), and reviewing shop drawings and samples. Of particular significance to specialty contractors is the [construction manager's] obligation to schedule and coordinate the work: 'The Construction Manager will schedule the work and coordinate the Work of all contractors on the project.' " J. Tieder & R. Cox, "Construction Management and the Specialty Trade (Prime) Contractors," 46 Law and Contemporary Problems, 39, 43 (Winter 1983), citing, American Institute of Architects, General Conditions of the Contract for Construction, Doc. A201/CM (construction management edition, June 1980).[3]

---

[3] For an excellent discussion of the legal aspects of construction management from the standpoint of major participants in the process see 46 Law

With these characterizations in mind, we conclude that the trial court properly found that the services performed by the plaintiff under the contract with the defendant were not construction management services within the meaning of General Statutes § 4-61 (a). The services performed by the plaintiff assisted disadvantaged and women's enterprises in obtaining certification to bid on and obtain DOT contracts, to ensure that the DOT provided fair opportunities to these enterprises, to monitor the enterprises' job progress and performance and to assist them in their dealings and relationships with the DOT. The plaintiff did not perform any specific construction management duties, such as coordinating and scheduling the work of all contractors on a specific construction project, nor did the contract require it to deal with any contractors on a specific project other than with regard to the disadvantaged and women's enterprises. Because the contract between the parties was not one for construction management services, § 4-61 (a) did not waive the defendant's immunity from suit under this contract.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

and Contemporary Problems 1 (Winter 1983). The entire issue is devoted to construction management.

[4] Because we conclude that this contract was not one for construction management services within the meaning of General Statutes § 4-61 (a), we need not address the question of whether the plaintiff's action was commenced within the section's statute of limitations. We note, however, that the statute does not clearly identify the applicable time period for situations such as the one presented here, where the defendant never issued a certificate of acceptance.