## AMERICAN LAUNDRY MACHINERY, INC. *v.*
## STATE OF CONNECTICUT
## (10972)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued March 10—decision released May 24, 1983

*Paul H. Lichtenberger,* with whom, on the brief, was *Michael P. Del Sole,* for the appellant (plaintiff).

*Thomas Yasensky,* assistant attorney general, with whom were *Edwin A. Roscoe,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (state).

SHEA, J. In this action for breach of contract against the state of Connecticut the court granted the motion of the defendant to dismiss the complaint upon the

ground of sovereign immunity. The plaintiff has appealed from that judgment, claiming that the contract relied upon in the complaint was "for the design, construction, repair or alteration" of a state building upon which suit against the state is authorized by General Statutes § 4-61.[1] After reviewing the contract attached to the amended complaint as an exhibit, the trial court concluded that it involved essentially the purchase of laundry equipment and that the work required of the plaintiff to install the equipment was not sufficient for the contract to qualify under § 4-61. We find no error.

The motion to dismiss filed by the defendant relies entirely upon the allegations of the complaint and does not seek to introduce any additional facts outside of the record. See Practice Book § 143. The complaint alleges that on August 18, 1975, the purchasing divi-

---

[1] "[General Statutes] Sec. 4-61. ACTIONS AGAINST THE STATE ON HIGHWAY AND PUBLIC WORKS CONTRACTS. Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, repair or alteration of any state highway, bridge, building or other public works may, in the event of any disputed claims under such contract, bring an action against the state to the superior court for the judicial district of Hartford-New Britain for the purpose of having such claims determined, provided notice of the general nature of such claims shall have been given in writing to the department administering the contract not later than two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor. No action shall be brought under this section later than three years from the date of such acceptance of the work by the agency head as so evidenced. Acceptance of an amount offered as final payment shall not preclude any person, firm or corporation from bringing a claim under this section. Such action shall be tried to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. Any action brought under this section shall be privileged in respect to assignment for trial upon motion of either party."

This provision has remained substantially unchanged since the time of the contract.

sion of the state department of finance and control[2] awarded to the plaintiff, as the successful bidder, a contract for the purchase and installation of certain laundry equipment in the laundry building of the Connecticut Valley Hospital in Middletown, a state institution. The contract specified in detail the equipment to be furnished by the plaintiff and also required that it be fully installed in the locations specified and be placed in operation upon completion of the work. The public works department of the state was to provide "steam lines, hot and cold water lines, compressed air and natural or LP gas to all points convenient to machinery and equipment" and would also make "all building modifications and alterations to the building structure." The plaintiff was required to provide all electrical lines and connections, to perform the plumbing work necessary to connect the equipment to the supply lines, and to do some duct work in connection with the air transfer system. The complaint alleged that performance of the installation work also required alterations and repairs to be made to various portions of the laundry room, including the electrical and ventilating systems. The total contract price was $781,887, which was apportioned among the three major components of the laundry, the washroom system, the flat ironing system and the folder-crossfolder stackers. The gravamen of the breach of contract alleged is that the state delayed the plaintiff in performing the installation work by failing to complete its obligations under the contract on time and by failing to coordinate the project.

General Statutes § 4-61 originally authorized suits against the state only upon highway or public works

---

[2] Although the complaint refers to the purchasing division of the state department of finance and control as making the award of the contract, General Statutes § 4-110 authorizes the director of purchases to award such contracts.

department contracts. Public Acts 1957, No. 229. In 1969 the statute was amended to allow actions upon contracts with the state, "acting through any of its departments, commissions or other agencies." Public Acts 1969, No. 429. The remedy of a suit against the state, however, continued to be restricted to contracts "for the design, construction, repair or alteration of any state highway, bridge, building or other public works." General Statutes § 4-61. This statute must be read in conjunction with General Statutes § 4-131,[3] which forbids any state officer or agency except the public works commissioner, "unless otherwise specifically authorized by law," from contracting for "any alteration, repair or addition to any real asset involving an expenditure of more than twenty-five thousand dollars." The legislative history of § 4-131 indicates that the term "real asset" was intended broadly to include any real property of the state except highways and bridges. *Connecticut Rural Roads Improvement Assn.* v. *Hurley,* 124 Conn. 20, 33, 197 A. 90 (1938). Since the amount of the contract alleged in the complaint exceeded $25,000, in the absence of other statutory authority, § 4-131 prohibited anyone but the public works commissioner from making it if it were an agreement for any "alteration, repair or addition to" the laundry building of the hospital, as the plaintiff claims.

---

[3] At the time of the contract General Statutes § 4-131 provided as follows:
"[General Statutes] Sec. 4-131. ALTERATIONS, REPAIRS OR ADDITIONS TO REAL ASSETS. The public works commissioner shall have charge and supervision of the remodeling, alteration, repair or enlargement of any real asset, except any highway or bridge, involving an expenditure in excess of twenty-five thousand dollars. No officer, department, institution, board, commission or council of the state government, except the public works commissioner or the commissioner of transportation, shall, unless otherwise specifically authorized by law, make or contract for the making of any alteration, repair or addition to any real asset involving an expenditure of more than twenty-five thousand dollars."

No claim has been made nor does it otherwise appear that the director of purchases was acting as the agent of the commissioner of public works in awarding the contract to the plaintiff. We also are unaware of any statutory provision specifically authorizing the director to enter into such a contract, which would invoke the "unless otherwise specifically authorized by law" exception from the prohibition of § 4-131.

The authority of the director of purchases in awarding the contract to the plaintiff was limited to purchasing or contracting for "all supplies, materials, equipment and contractual services required by any state agency." General Statutes § 4-110.[4] The statutory definitions in General Statutes § 4-109[5] clearly indicate that the terms, "supplies," "materials," and "equipment" refer to personal property, and that the term "contractual services," does not include work involving the alteration or repair of a building. The plaintiff

---

[4] At the time of the contract, General Statutes (Rev. to 1975) § 4-110 provided in part as follows: "Sec. 4-110. DUTIES OF DIRECTOR OF PURCHASES. The director of purchases shall (a) except as provided in sections 4-98 and 4-112, purchase or contract for all supplies, materials, equipment and contractual services required by any state agency . . . ."

[5] At the time of the contract General Statutes (Rev. to 1975) § 4-109 provided as follows:

"Sec. 4-109. DEFINITIONS. When used in this part, unless the context indicates a different meaning, "state agency" includes any officer, department, board, council, commission, institution or other agency of the executive department of the state government; the terms "supplies," "materials" and "equipment" mean any and all articles of personal property furnished to or used by any state agency, including all printing, binding, publication of laws, stationery, forms and reports; the term "contractual services" means any and all gas, water and electric light and power services, laundry and cleaning service, pest control service, the rental and repair, or maintenance, of equipment, machinery and other state-owned personal property, advertising and photostating, mimeographing, keypunching and other machine service arrangements where the services are provided by persons other than state employees."

relies upon a provision of General Statutes § 4-110 (f)[6] which empowers the director of purchases to "establish and operate or have supervisory control over . . . laundries" and it argues that such authority must encompass any alterations of the laundry building necessary for installation of the equipment to be supplied by the plaintiff. We would not dispute the existence of some authority to contract for minor repairs or alterations of a building incidental to the performance of some delegated function of a state officer or agency, so long as the monetary limit established by § 4-131 is not exceeded. The fact that such incidental work may be necessary to install the laundry equipment to be furnished by the plaintiff cannot be deemed to transform its contract into one for the "repair or alteration" of a state building, the necessary prerequisite for a suit against the state established by § 4-61. The tail cannot wag the dog.

The plaintiff is correct in contending that when a motion to dismiss does not seek to introduce facts outside of the record it is equivalent to our former motion to erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. *Brewster* v. *Brewster,* 152 Conn. 228, 233, 206 A.2d 106 (1964). The allegations of the complaint as to the nature of the contract, which appear to claim that it is one for alterations and repairs of the laundry building, are, however, essentially legal conclusions. Practice Book §§ 108, 109. "[They are] to be tested by the facts alleged, and [add] nothing to the strength of the pleading." *Weinstein* v. *Mutual Trust Life Ins. Co.,*

---

[6] At the time of the contract General Statutes (Rev. to 1975) § 4-110 (f) provided as follows: "Sec. 4-110. DUTIES OF DIRECTOR OF PURCHASES. The director of purchases shall . . . (f) establish and operate or have supervisory control over central or regional bakeries, meat cutting establishments, laundries and other central supply services in such locations as may best serve the requirements of the state agencies."

116 Conn. 654, 659, 166 A. 63 (1933); see also *Andersen* v. *Colwell,* 93 Conn. 61, 65, 104 A. 242 (1918). If the contrary conclusions which the trial court reached required an estimate of the value of the services claimed to be related to altering the building in order to determine whether they were merely incidental to the purchase and installation of the laundry equipment, some kind of evidentiary hearing might have been necessary before deciding the motion to dismiss. See *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983); 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1982 Supp.) § 108d, p. S73.

The terms of the contract itself, however, viewed in the light of the statutes allocating jurisdiction over the alteration and repair of state buildings to the public works commissioner, leave no doubt as to the incidental nature of any such work which the plaintiff may have been required to perform. The claim of the plaintiff that the "duct work" and electrical work it was required to perform constituted an "alteration" of the laundry building within the meaning of § 4-61 is not supported by the contract provisions relied upon. The "duct work" in the air transfer system to be supplied by the plaintiff did not require any work upon the building itself except possibly that involved in making connections to existing ducts. One paragraph[7] of the general specifications stipulated that supply lines for steam, hot and cold water, compressed air and natural and LP gas would be provided by the public works department at points convenient for the machinery and

---

[7] Paragraph 5 of the general specifications provided as follows: "The Public Works Department of the State will provide steam lines, hot and cold water lines, compressed air and natural or LP gas to all points convenient to machinery and equipment. The successful bidder shall provide all electrical lines and connections. All building modifications and alterations to the building structure shall be provided by the Public Works Department of the State."

equipment to be installed. The obligation imposed on the plaintiff by this paragraph to furnish "all electrical lines and connections" does not imply any alteration of the building, which apparently had an existing electrical service.[8] Whatever cost might be entailed, this work could not be deemed an alteration of the building because the final sentence of the paragraph required that "all building modifications and alterations to the building structure" be made by the public works department. This provision makes it clear that the parties could not have regarded any of the work to be performed by the plaintiff as an alteration of the building. We find no error in the conclusion of the trial court that the contract alleged, which was presented as an exhibit to the complaint, could not reasonably be considered as one for the repair or alteration of a state building as claimed by the defendant.

There is no error.

In this opinion the other judges concurred.

---

[8] Paragraph 7a of the general conditions of the contract provides as follows: "The General Contractor will be allowed the use of existing electrical, water, heating and telephone facilities within the contract area."