[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS (#102)
The plaintiff, UOP, which is a new[New] York partnership with its headquarters and largest business location in Des Plaines, Illinois, filed a seven-count complaint on May 25, 1995, against Andersen Consulting (AC), and Andersen Consulting, L.L.P. (AC LLP) for actions arising out of a contract for computer systems integrated services. One of UOP's general partners is a Maryland corporation with its principal place of business in Danbury, Connecticut. AC, which executed and performed the contract at issue, was an Illinois general partnership. On September 1, 1994, AC LLP registered as a limited liability partnership under the laws of Illinois and retained the rights and obligations of AC. The bulk of AC LLP's headquarters functions and its largest business office are located in Illinois. This dispute arises out of a contract negotiated, executed and performed in Illinois. The parties agreed in the contract that their legal relations would be governed by the law of Illinois.
AC LLP moves to dismiss the action due to lack of personal' jurisdiction and forum non conveniens. AC LLP filed a memorandum of law, with affidavits and exhibits, in support of its motion for summary judgment. UOP filed a memorandum of law, affidavits and exhibits in opposition to the motion, and AC LLP filed a reply memorandum in support of the motion. Both parties filed a stipulation.
"A motion to dismiss . . .`properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a mater of law and fact state a cause of action that should be heard by the court.'" (Emphasis in the original.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). A motion to dismiss "does not seek to introduce facts outside of the record . . . and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." AmericanCT Page 14570Laundry Machinery, Inc. v. State, 190 Conn. 212, 717,459 A.2d 1031 (1983).
A. Personal Jurisdiction
AC LLP argues that because AC LLP is a foreign limited liability partnership, and the dispute does not arise out of the transaction of any business in Connecticut, Connecticut General Statutes § 52-59b, Connecticut's long-arm statute, does not authorize personal jurisdiction over AC LLP.
UOP responds that personal jurisdiction exits for several reasons. First, that AC has two offices in Connecticut with 13 partners in its Hartford office, and that under the Connecticut long-arm statute, UOP's claims arise from one or more of the activities listed in the statute as recently interpreted by the Connecticut Supreme Court. Second, Andersen should not be deemed a foreign partnership, and therefore the Connecticut long-arm statute should not apply because partners of Andersen live in Connecticut. Third, one of Andersen's partners was personally served with process in Connecticut, creating an independent basis for personal jurisdiction.
The first issue is whether the defendant is AC or AC LLP. The complaint states that AC LLP is the successor-in-interest to Andersen Consulting and has assumed all of AC's legal duties, obligations and liabilities. Since the partnership and the limited liability partnership are foreign partnerships, see infra, and both were sued in their partnership names, they are both foreign partnerships and the court need not address which party is the proper party to the action.
The second issue is whether the Connecticut long-arm statute applies. AC LLP argues that the Connecticut long-arm statute § 52-59b(a) applies because AC LLP is a foreign partnership. UOP argues that because Andersen is a partnership, its citizenship is defined by where any partner resides and General Statutes § 52-59b as it relates to "foreign partnerships" does not apply.
Connecticut has not addressed the issue. The Connecticut long-arm statute does not define the phrase "foreign partnership", nor has a Connecticut court established the meaning of foreign partnership with respect to the long-arm statute. The Uniform Limited Partnership Act, General Statutes § 34-9 (5) CT Page 14571 defines a foreign limited partnership as a "a partnership formed under the laws of any state other than this state and having as partners one or more general partners and one or more limited partners." General Statutes § 34-9 (5). General Statutes § 34-40 (9), effective January 1, 1996, defines a foreign registered limited liability partnership as "a partnership formed pursuant to an agreement governed by the laws of any state other than this state and registered or denominated as a registered limited liability partnership or limited liability partnership under the laws of such other state." Both of these sections provide persuasive authority that AC LLP is a foreign limited liability partnership. AC LLP relies on Xerox Corp. v. AxelJohnson Energy Dev., 8 Conn. L. Rptr. 551 (1993), a case in which the defendants were a corporation and a California limited liability partnership. Three months before the action began the defendants moved their offices to Stamford. The court considered the partnership to be a foreign partnership even though its headquarters were in Connecticut. By affidavit the defendant shows that both AC and AC LLP were formed under the laws of Illinois. (Hermes Affidavit, ¶ 2). UOP has not disputed this. Accordingly, AC is a foreign partnership within the meaning of § 52-59b.
The next inquiry is whether the requirements of the long arm statute have been met. General Statutes § 52-59b(a) provides in pertinent part, "[a]s to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any . . . foreign partnership . . . who in person or through an agent: (1) Transacts any business within the state."[1] AC LLP does not dispute that AC or AC LLP transacted business within the state but argues that the language `arising from' requires the establishment of a "substantial relationship or nexus between the business transacted by the defendant in the state and the plaintiff's cause of action."Chemical Bank v. Schlesinger, Superior Court, Judicial District of Stamford, Docket No. 122878 (Dec. 21, 1993) (Mottolese, J.);Cooper v. Woodbridge Associates, 6 Conn. L. Rptr. 415, 417 (1992). AC LLP argues that UOP cannot show such a nexus because all negotiations, actions, and executions relating to the contract were in Illinois.
UOP counters that the Supreme Court in Thomason v. ChemicalBank, 234 Conn. 281, 661 A.2d 595 (1995) eliminated this requirement. This court is aware of Thomason as it was the trial court that was reversed. The court in Thomason held, "[f]or CT Page 14572 purposes of § 33-411 (c)(2) [the corporate long-arm statute], a plaintiff's `cause of action arises . . . out of . . . business solicited in this state' if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." Id., 296. "[T]he statute does not require proof of a `casual connection' between the solicitation and the plaintiff's injuries." Id. AC LLP counters that the court interpreted § 33-411 (c)(2) only, and did not extend its holding to other sections such as § 33-411 (b) which it claims is the corporate analog to General Statutes § 52-59 (b). AC LLP also argues that different subsections of the long-arm statute; have been construed differently. See Lombard Bros. Inc. v. General Asset ManagementCo., 190 Conn. 245, 460 A.d 481 (1983).
The Thomason decision first distinguishes between the words `arise out of' in the federal and Connecticut contexts, determining that "the statute does not entirely preclude the exercise of 'general' jurisdiction and that the phrase `arising out of' in the statute, unlike that phrase in the constitutional test, does not require a casual connection between the defendant's forum-directed activities and the plaintiffs' lawsuit." Thomason v. Chemical Bank, 234 Conn. 281, 290. In a footnote the court comments, "the use of `arising out of' in our statute cannot have been intended to limit our courts to exercising only a portion of otherwise permissible specific jurisdiction." Id., 291 n. 6. The court also comments, "[a]ll aspects of our long arm statute restrict the exercise of jurisdiction to cases that `arise out of' a defendant's forum contacts." Id., 290 n. 5. The court concludes that the words have different meanings in the statutory and constitutional context. Id., 292. The court further found that the legislature did intend to put some limits on the exercise of jurisdiction short of constitutionally permissible long-arm jurisdiction, and articulated the above test. Id., 293-96. It is unlikely that the court could have meant for the words `arising out of' to have different meanings not only in the constitutional arena and the statutory arena, but also among subsections in the same statute. By its words, "our statute cannot have been intended to limit our courts to exercising only a portion of otherwise permissible specific jurisdiction" the court referred to the entire long-arm statute. CT Page 14573
Stipulations submitted by the parties establish that AC LLP's office in Hartford solicits clients and enters into contracts to perform systems design, development and/or integration development 'activities, and therefore could expect to be hailed into a Connecticut court on a cause of action similar to this matter. Therefore, UOP has demonstrated sufficient contacts to meet the Connecticut long arm statute.
Lastly, the court must determine whether the exercise of jurisdiction violates constitutional principles of due process, as embodied in the due process clause of the 14th Amendment to the United States Constitution. Frazer v. McGowan, 198 Conn. 243, 246,502 A.2d 905 (1986). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart, 197 Conn. 34, 41,495 A.2d 1034 (1985). The presence of two offices and thirteen partners in Connecticut satisfy the requirement for minimum contacts. AC LLP "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]," Hanson v. Denckla,357 U.S. 235, 253 (1958), and therefore it is foreseeable that it could be hailed into court in Connecticut.
B. Forum Non Conveniens
AC LLP asks the court to dismiss the action on forum non conveniens grounds. AC LLP claims that all parties, documents, and likely witnesses are located in Illinois. Furthermore, non-employee Illinois residents would not be subject to the Connecticut's subpoena power and therefore could not be compelled to testify at trial. UOP argues that the plaintiff's chosen forum is entitled to a strong presumption in its favor. Furthermore, Andersen has a strong presence in Connecticut including an office in Stamford, UOP has a partner in Connecticut, some of UOP's material witnesses are in Connecticut, and adjudication of the claims would be greatly delayed in the alternative forum in Illinois due to court congestion.
"The central principle of the forum non conveniens doctrine [is] that `unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Picketts v. International Playtex, Inc.,215 Conn. 490, 500, 576 A.2d 518 (1990). "[I]nvocation of the doctrine of forum non conveniens is a `drastic remedy' . . . The question to be answered is whether the plaintiff's chosen forum is itself inappropriate or unfair because of the various private and public CT Page 14574 interest considerations involved." Id., 501. The court inPicketts commented that jet travel, satellite communication and videotaped depositions had transformed the meaning of compulsory process. Id., 511. "It is difficult to imagine after Picketts
that the granting of a forum non conveniens motion would ever be sustained." Xerox Corp. v. Axel Johnson Energy Dev., supra. Accordingly, UOP's choice should be accorded a strong preference in denying dismissal on forum non conveniens grounds. UOP's identification of key witnesses in Connecticut, the existence of offices from which AC LLP may work, and the delays in the Illinois courts are sufficient reasons to hold that UOP's chosen forum is neither inappropriate nor unfair.
For the foregoing reasons the motion to dismiss is denied.
So ordered.
KARAZIN, J.