[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS
Round one of this zoning appeal[1] ended with the granting by this court of the defendants' motion to dismiss, based on their successful claim that the appeal was not served upon any of the defendants until more than fifteen days after publication of the legal notice of the decision of the Meriden Zoning Board of Appeals (ZBA). See General Statutes § 8-8(b).[2]
Judgment dismissing this first action was entered on November 16, 1995. The present action was served upon the defendants within fifteen days of that decision, in which this court determined that there had been defective service. The plaintiff CT Page 1319-LL now claims, in response to the motion to dismiss filed by the defendants in this case, that the saving provisions of General Statutes § 8-8(p) and 8-8(q) apply.[3] The issue presently before the court is whether the untimely service in the first action was the result of "unavoidable accident" or "the neglect or default of" Sheriff Joseph Salafia, to whom the plaintiffs had entrusted the task of service.
The basic facts do not appear to be in serious dispute. Publication of the ZBA's decision was made in the MeridenRecord-Journal on August 11, 1995. By statute, the plaintiffs had until August 26 to effect service. On August 22, 1995, Diana D'Angelo, secretary to the plaintiff's attorney, Brian Smith of the Hartford-based law firm of Robinson and Cole, telephoned Sheriff Salafia to determine whether he would be able to make service within the required time period. Robinson and Cole had utilized Sheriff Salafia's services on several previous occasions, all involving the named plaintiff and defendants, the most recent being in 1994. In contacting Sheriff Salafia, Ms. D'Angelo had relied on the listing of sheriffs in the Lawyer's Diary, published by the Connecticut Bar Association.
When she called the number listed in the Lawyer's Diary on August 22, Sheriff Salafia was not in, and the telephone was answered by his wife. Ms. Salafia indicated she believed that her husband would be able to handle the matter and that she would deliver the message. The following day, Sheriff Salafia returned the call and agreed to make service on the defendants. On August 23, Ms. D'Angelo arranged for Federal Express overnight delivery of the materials to the address listed in the Lawyer's Diary.
Unbeknownst to Ms. D'Angelo or Mr. Smith, Sheriff Salafia had changed his address some two months earlier.[4] Also unbeknownst to Ms. D'Angelo or Mr. Smith, Sheriff Salafia apparently had had a long-standing arrangement with Federal Express whereby packages could be left for him at that address without his signing for them.[5] It is undisputed that Salafia did not inform plaintiff's counsel of this arrangement. It is assumed for purposes of this motion that the materials did arrive at the South Vine Street address on August 24, even though there is no signature acknowledging receipt.
On August 28, Attorney Smith called Sheriff Salafia to confirm that the papers had been served. Sheriff Salafia then reported that he had never even received them. At this time, CT Page 1319-MM Smith first learned of Salafia's change of address. Salafia then went to 108 South Vine Street address and retrieved the papers, which he immediately served. As previously stated, this court has determined that this service was untimely and therefore defective, leaving this court without jurisdiction.
The court, at the time it dismissed the action, declined an invitation to determine whether the defect was due to "unavoidable accident" or "the neglect or default of" Sheriff Salafia, based on its view that the issue was not at that time properly before the court. With the papers now having been re-served within the 15 days following the granting of the first motion to dismiss, the issue of whether the defect was due to "unavoidable accident" or "the neglect or default of" Sheriff Salafia is now properly before the court, and the defendants' motion to dismiss is the appropriate way to raise it.
"A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, ___ A.2d ___ (1985). "The appeal provisions of the statute are jurisdictional in nature, and, if not complied with render the appeal petition subject to dismissal." Donis v. Board of Examiners of Podiatry, 207 Conn. 674,682, ___ A.2d ___ (1988). "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial or here . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." Mannweiler v. LaFlamme, 232 Conn. 27, 35,___ A.2d ___ (1995). "We have consistently stressed that strict observance of this jurisdictional requirement is necessary." Id. The motion to dismiss is the "proper vehicle for claiming any lack of jurisdiction in the trial court." The motion to dismiss admits all well-pleaded facts, and the complaint is construed in the light most favorable to the plaintiff. American LaundryMachine, Inc. v. State, 190 Conn. 212, 217, 459 A.2d 1031 (1983).
The parties concede, and this court acknowledges, that there is no appellate authority specifically addressing § 8-8(p) or (q) and the bizarre facts involved in this case. Nor has this court been able to locate a comparable case in any other jurisdiction.
The plaintiff's claim that personal delivery of the papers to the sheriff or the sheriff's office was prevented by "unavoidable CT Page 1319-NN accident" is without merit. A simple inquiry to Sheriff Salafia or to Ms. Salafia as to whether the address listed in the Lawyer's Diary was still current would have solved the problem before it occurred. To the extent that the failure to make service was due to an "accident", it was surely avoidable.
Nor is this a question of the sheriff's "default". Had he actually received the papers on time and done nothing with them, this provision of the statute would come into play. Having not even received the papers within the statutory timeframe, whatever Sheriff Salafia did or did not do cannot be viewed as a "default".
The most intriguing question raised by this case is therefore whether the failure of service should be attributed to the sheriff's neglect. Clearly, he failed to volunteer to Ms. D'Angelo that the address which had been used by the plaintiff's attorney in the past was no longer valid.[6] Since he was the only party to these conversations who knew of the change of address, the plaintiff argues that it was incumbent upon Sheriff Salafia to volunteer this information, and that his failure to do so was neglectful.
It is clear that at various points between August 22 and August 26, a simple inquiry by either the sheriff, on the one hand, or the plaintiff's counsel, on the other, would have identified this problem and avoided it, and the defendants argue that the sheriff's neglect, if any, was trivial in comparison with that of the plaintiff's attorneys. They argue, based on anecdotal evidence[7], that it was incumbent upon the plaintiff's attorney to ascertain that the address which they maintained for the sheriff was still current. They further argue that, given the narrow window of time within which service may be made in a zoning appeal, it was also incumbent upon the plaintiff's attorneys to telephone Sheriff Salafia to confirm that he had received the papers and that he would serve them on time.
The defendants also imply, without specifically so arguing, that there cannot be "neglect" on the part of the sheriff absent a duty of care owed by the sheriff to the plaintiff. Although there is certainly a duty to make timely service once the papers are committed to him (and the failure to properly perform this duty would certainly trigger the "neglect", if not the "default", provisions of this statute), it is not at all clear that the CT Page 1319-OO sheriff is under any duty to advise the plaintiff or his attorneys of his change of address, although it would certainly be sound business practice to do so.
The plaintiff also argues that since the telephone number listed in the Lawyer's Diary was obviously still accurate, there was no reason to inquire about the address. However, and although no evidence was offered on this point, it is fairly common knowledge that individuals who change their address within the same town will frequently retain their former telephone numbers.
Moreover, assuming, arguendo, that neglect by the sheriff at least contributed to the defective service, in order for § 8-8(q) to be applicable, plaintiff must prove that the process was "committed" to the sheriff, to use the language of § 8-8(q). To determine the meaning of this word, Judge Fuller, in his commentary to Practice Book Volume 9 § 25.10 p. 467, suggests that General Statutes § 52-593a applies to § 8-8(q).
Section 52-593a[8] provides in relevant part: "No cause or right of action shall be lost because of the passage of the time limited by law within which such action may be brought, if the process to be served is personally delivered to an officer authorized to serve such process or is personally delivered to the office of any sheriff within the time limited by law . . .";Flaim Enterprises, Inc. v. Town Planning and Zoning Commission ofthe Town of Orange, 3 Conn. L. Rptr. 291, 292 (1991); See Mariov. Conservation Commission of Fairfield, 33 Conn. Sup. 172,367 A.2d 698 (1976) (§ 52-593a validates a sheriff's service up to 15 days after the statutory time if the delivery to the sheriff was before the end of the statutory period); Francini v.Zoning Board of Appeals, 7 CSCR 1148 (1992) ( § 52-593a is applicable to zoning appeals and § 52-593a extends the time the sheriff may service process only if the process has been personally delivered to the sheriff within the statutory period).
In Zarillo v. Peck, 33 Conn. Sup. 676, 678-80, 366 A.2d 1165
(1976), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976), the court addressed the quantum of delivery necessary to trigger § 52-593a.
 "All that 52-593a requires, . . . is that the process be personally delivered. It does not require that the delivery be made by the plaintiff, his attorney, or any particular individual. The person making the delivery has no statutory CT Page 1319-PP role to perform respecting the delivery. He is neither required nor permitted to endorse his doings on the return. In addition, the statute does not detail the manner of making delivery. The word `deliver' includes a handing over for the purpose of taking even though both acts do not occur simultaneously. State v. Koenig, 120 Conn. 39, 43. Although delivery by mail is not mentioned in the extension statute, such delivery is not precluded. The fact that the extension statute becomes operative only where the process has been delivered before the running of the statute of limitations, and the fact that the serving officer is required to attest to the date of delivery suggest that the purpose of the statute is to ensure that the process is received on time by the officer. The word `personally' means in a personal manner; Webster, Third New International Dictionary; in person. World Book Encyclopedia Dictionary. For something to be delivered in person it must be so delivered as to come into the possession of the person to whom it is to be delivered. Thus, where a delivery of process is to be made by mail, it has not been personally delivered until it has been received in person by the serving officer, at which point he can so attest.
 If our extension statute simply used the word `delivered' without the modifier, there would be [a] question as to whether depositing the process in the mail box might not be a sufficient delivery. In Palm v. Jones, 74 Misc.2d 580
(N.Y.), the court, construing a statute . . . which provides a sixty-day extension where the summons is delivered to the sheriff for service upon the defendant, held that the deposit of a letter containing the summons in a post office box was tantamount to delivery even though the letter was received after the running of the limitations statute. In another case it was held that although mailing was not forbidden it was at the risk of the sender and, unless the process was received within the period of the statute of limitations, the fact that it had been mailed was ineffectual to extend the time for service. Interstate System, Inc. v. Bev Pac, Inc., 77 Misc.2d 129 (N.Y.). The Use of the word `personally' in our statute makes it crystal clear that the process must be received by the officer within the limitations period in order to make the extension statute operative. We hold that the process which came into the hands of the deputy sheriff by mail was "personally delivered" to him within the meaning of 52-593a of the General Statutes." (Emphasis added).
CT Page 1319-QQ
Zarillo v. Peck, 33 Conn. Sup. 676, 678-80, 366 A.2d 1165 (1976), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976).
Applying this reasoning, there was no such "personal delivery" until August 28, 1995, after the fifteen day statute had run. The sheriff did not take physical possession of the papers until that date, and the address to which they had been delivered by the plaintiff's counsel was not the sheriff's office any longer. Based on Zarillo v. Peck, therefore, the "neglect" provisions of § 8-8(q) are not even triggered until the papers have been personally received by the sheriff. Since the "neglect" if any, on the part of the sheriff occurred before the papers were committed to him, § 8-8(q) is inapplicable. The next issue is whether the sheriff's agreement with FedEx, to leave packages without his signature, even if the signature is requested by the customer, has any affect on the applicability of § 8-8(q).
Plaintiff's final argument is that even if its appeal cannot be saved by the provision of § 8-8(q), he is entitled to the benefit of § 8-8(p), which states in relevant part: "The right of a person to appeal a decision of a board to the superior court, and the procedure prescribed in this section, shall be liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice." In OrangeMall Shopping Center Company Limited Partnership v. Town Planningand Zoning Commission of the Town of Orange, 1 Conn. L. Rptr. 303
(February 23, 1990, Fuller, J.), however, Judge Fuller held that the legislative intent behind § 8-8(p) was to avoid the harshness of dismissing zoning appeals for procedural technicalities, but not to permit late appeals. See, also, Dugganv. Derby Zoning Board of Appeals, 2 Conn. L. Rptr. 565, 566 (October 4, 1990, Fuller, J.). This view was also adopted by Judge Dunn in Carr v. Somers Zoning Board of Appeals, Superior Court, judicial district of Tolland, Docket No. 044024 (December 13, 1991, Dunn, J.) (§ 8-8(p) does not permit late appeals).
More recently, however, a more forgiving view of the meaning of § 8-8(p) was taken by Judge Booth in Wasilewski v.Planning and Zoning Commission, Superior Court, judicial district of New Haven, Docket No. CV93-0354703 (May 13, 1994)1994 Ct. Sup. 5133. Relying on Castellon v. Zoning Board of Appeals221 Conn. 374, 383, 384, a Supreme Court decision which postdates both Orange Mall and Carr, Judge Booth found that: CT Page 1319-RR
 "under the proper circumstances, 8-8p, and by extension 8-8q, can be used to save a zoning appeal from a jurisdictional defect. It appears to this court that the gravamen of the statute's ability to save an appeal from a jurisdictional defect is that the plaintiff attempted to take an appeal within a timely manner, that the commission was aware of the fact that an appeal was taken within a timely manner, and that the plaintiff made some kind of a mistake in taking its appeal . . . While recognizing that the Supreme Court in Castellon addresses 8-8p almost as an afterthought, recognizing further that the decision does not analyze the difference between defects of form and defects going to jurisdiction, nevertheless it appears to the court that the plaintiff took his initial appeal in a timely manner, refiled his appeal within the time limit set forth in 8-8q, and the town was not prejudiced by the defect in the original appeal, Castellon is controlling . . ." 1994 Ct. Sup. at 5136, 5137.
There is no question here but that the plaintiff attempted to take his appeal in a timely manner but was thwarted by the failure to make service. It is not known whether the defendants were aware of the appeal within the initial fifteen-day period, although they certainly knew of it two days later when the sheriff made his belated service. It is also undisputed that the plaintiff refiled his appeal within the time period contemplated by General Statutes § 8-8(q). There has been no evidence to suggest that that the defendants have been in any way prejudiced by the initial untimely service.
On balance, given the particular and unusual facts of this case, and with the aid of the Supreme Court's language in Castellon, this court is persuaded that Judge Booth's well-reasoned approach to this type of situation is sound and ought to be adopted by this court as well. Despite the fact that the initial defect in service cannot be blamed, strictly speaking, on unavoidable accident or the neglect or default of the sheriff, the circumstances of this case require that the liberal provisions of § 8-8(p) rescue this case from dismissal.
Although this appeal has survived dismissal, one hopes that in future cases attorneys will take additional and more careful steps to ensure that process is actually committed to the sheriff within the meaning of the law. Such a burden is neither CT Page 1319-SS unnecessary nor unrealistic in light of the potential consequences which the plaintiff has only barely escaped here.
For all of the above reasons, the motion to dismiss is denied.
Jonathan E. Silbert, Judge.