[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 1, 1996
FACTS
The present case is an action for age and sex discrimination commenced by the plaintiff, Dorothy Lueneburg, against the defendants, the Mystic Dental Group, P.C. (MDG), Dr. Michael Smyle and Dr. Mark Fallon. The plaintiff's claims are brought pursuant to the Age Discrimination in Employment Act (ADEA), CT Page 530229 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, and/or the Connecticut Fair Employment Practices Act (CFEPA), General Statutes §§ 46a-51et seq.
The plaintiff commenced the present action by complaint filed on September 11, 1995, which she subsequently amended on January 3, 1996. The plaintiff alleges that from the period of August 1984 to February 14, 1994, she was employed by MDG as a dental assistant, performing such duties as instrument and operatory care, taking impressions and bite registrations and applying topical anesthetics, that defendants Smyle and Fallon were two of her supervisors at MDG, that she was forced to engage in unwelcome sexual conduct with defendant Smyle from February 1987 to December 1991 and with defendant Fallon from the year 1988 to January 1994, and that the plaintiff believed such sexual conduct was a condition of continued employment such that she would suffer repercussions, up to and including termination, if she refused the defendants' advances.
The plaintiff goes on to allege that her last sexual contact with defendant Fallon was on October 8, 1993, but that he continued to pressure her to engage in such conduct with him and to touch, fondle and kiss the plaintiff inappropriately at the office until about February 5, 1994, at which time the plaintiff rebuffed the advances of defendant Fallon for the final time at a charity event known as Monte-Carlo night. The plaintiff alleges that shortly after rejecting defendant Fallon's advances, on February 14, 1994, she was summoned into the office and terminated by the defendants for "lack of work," that she was the oldest female and third-ranking in seniority of six dental assistants in the defendants' employ at the time she was terminated, that the defendants hired a substantially younger and less experienced dental assistant shortly after terminating the plaintiff, and that the plaintiff's age and or refusal to engage in further sexual conduct with defendants Fallon and Smyle was a factor in the decision to terminate her.
The plaintiff also alleges that she filed charges of discrimination with both the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the Equal Employment Opportunity Commission (EEOC) and that the CCHRO released its jurisdiction over the action on August 8, 1995. The plaintiff asserts claims for quid pro quo sexual harassment and hostile CT Page 5303 work environment, sexual harassment against MDG in counts one and two, respectively, sex discrimination against defendants Smyle and Fallon in counts three and four, respectively, negligent supervision against MDG in count five and also against defendants Fallon and Smyle in count six, age discrimination against MDG in count seven and also against defendants Smyle and Fallon in count eight, and assault and battery against defendant Fallon in count nine.
The defendant filed the present motion to dismiss the plaintiff's complaint on March 11, 1996. The plaintiff filed an objection on March 27, 1996. Pursuant to Practice Book § 143, both parties have submitted an appropriate supporting memoranda of law.[1]
DISCUSSION
A motion to dismiss attacks the court's jurisdiction to hear the present action: "the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Gurliacci v. Mayer, 218 Conn. 531, 514, 590 A.2d 914 (1991). There are three separate elements of the jurisdiction of a court: jurisdiction over the person, jurisdiction over the subject matter, and jurisdiction to render a particular judgment. Castrov. Viera, 207 Conn. 420, 433, 541 A.2d 1216 (1988). Subject matter jurisdiction "is the power of the court to hear and decide cases of the general class to which the proceedings in question belong." Gurliacci v. Mayer, supra, 218 Conn. 542. Personal jurisdiction is the power of the court to subject an individual to a judgment in personam, a judgment which effects one's personal rights. Standard Tallow Corporation v. Jowdy, 190 Conn. 48,51-52, 459 A.2d 503 (1983). "[E]very presumption is to be indulged in favor of jurisdiction." Gurliacci v. Mayer, supra,218 Conn. 543.
In ruling upon a motion to dismiss, "the complaint [is to be] construed most favorably to the plaintiff." American LaundryMachinery, Inc. v. State, 190 Conn. 212, 217, 459 A.2d 1031
(1983). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. Where, however. . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations in the complaint." Barde v. Board of Trustees,
CT Page 5304207 Conn. 59, 62, 539 A.2d 1000 (1988).
A defendant generally has up to thirty days from the time it files an appearance in which to file a motion to dismiss. ConceptAssociates v. Board of Tax Review, 229 Conn. 618, 625.642 A.2d 1186 (1994). The issue of subject matter jurisdiction, however, may be raised at any time and may be raised by the court's own motion. (Emphasis added.) Lewis v. Gaming Policy Board, 224 Conn. 693,698, 620 A.2d 780 (1993).
The defendant seeks to dismiss the third, fourth and eighth counts of the plaintiffs complaint. Counts three and four assert claims for sex discrimination against defendants Smyle and Fallon individually and count eight asserts a claim for age discrimination against both defendants individually. The defendants argue that the court lacks subject matter jurisdiction over these claims, because the defendants are not statutory employers under Title VII, the ADEA or the CFEPA and, therefore, may not be sued in their individual capacities for violations thereof.
The case law is clear, and the plaintiff concedes in her brief, that the defendants are not employers and may not be held liable individually under Title VII. Tomka v. Seiler Corp.,66 F.3d 1295, 1317 (2d Cir. 1995); Shaeffer v. Ames DepartmentStores. Inc., 889 F. Sup. 41 (D. Conn. 1995). The plaintiff further concedes that the defendants may not be sued individually under the ADEA. Miller v. Maxwell's Intern, Inc., 991 F.2d 583,557-58 (9th Cir. 1993). While this issue has not yet been addressed by the United States Court of Appeals for the Second Circuit, this court agrees with the current holdings of several United States Districts Courts within the Second Circuit that supervisory employees may not be sued individually under the ADEA. See Gregor v. Derwinski, 911 F. Sup. 643, 654 (W.D.N Y 1996), and Leykis v. NYP Holdings, Inc., 899 F. Sup. 986, 990-91
(E.D.N.Y. 1995).
The only remaining issue to decide is whether defendants Fallon and Smyle may be held individually liable under the CFEPA. Upon researching the decisions of the Supreme, Appellate and Superior Courts of this state, this issue appears to be one of first impression.
The defendants rely heavily on the reasoning of the federal cases cited above to argue that supervisory employees may not be CT Page 5305 held individually liable under the CFEPA. The statutory definitions and remedies provided for under the CFEPA are significantly different from the ADEA and Title VII and these differences are intended to express a legislative intent to allow supervisory employees to be held individually liable for discrimination. See Evening Sentinel v. National Organization forWomen, 168 Conn. 26, 23-35 n. 5, 357 A.2d 498 (1975).
With regard to the construction and application of the CFEPA in light of the federal decisions construing Title VII and the ADEA, our Supreme Court has stated:
 Although the language of [Title VII of the Civil Rights Act of 1964 . . .] and that of the Connecticut statute differ slightly, it is clear that the intent of the legislature in adopting 1967 Public Acts, No. 426 (which extended the provisions of the Fair Employment Practices Act . . . to prohibit discrimination on the basis of sex) was to make the Connecticut statute coextensive with the federal . . . Although we are not bound by federal interpretation of Title VII provisions, [w]e have often looked to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute . . . Nevertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach to the subject.
(Alterations in original; citations omitted; footnote omitted; internal quotation marks omitted.) State v. Commission on HumanRights Opportunities, 211 Conn. 464. 469-70, 559 A.2d 1120
(1989).
The court in Maxwell's Intern, Inc. based its conclusion that supervisory employees may not be held individually liable under the ADEA on the fact that the statutory scheme evidences an intent by Congress, while attempting to eradicate discrimination, to avoid burdening small employers with the enormous costs of litigation. Miller v. Maxwell's Intern, Inc., supra, 991 F.2d 587-88. The court stated that "Title VII limits liability to employers with fifteen or more employees . . . and the ADEA limits liability to employers with twenty or more employees . . . in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited CT Page 5306 resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." Id., 587. The reasoning of Miller was relied upon in great part by the court in Tomka when it concluded that Title VII was also not intended to impose liability on individual employees. Tomka v. Seiler Corp., supra, 66 F.3d 1315.
In contrast to Title VII and the ADEA, "Employer" under the CFEPA "includes the state and all political subdivisions thereof and means any person or employer with three or more persons in his employ." (Emphasis added.) General Statutes § 46a-51(10). Three employees is a significantly smaller number than the fifteen or twenty employees required under Title VII or the ADEA, respectively, before liability will attach for discrimination. Our Supreme Court has previously discussed the meaning of textual differences between the CFEPA and the federal equal employment Acts, stating:
 In light of a release of December 2, 1969, by the commission, to the effect that the CFEP [Connecticut Fair Employment Practices legislation] is in many respects stronger than the FEP [Federal Fair Employment Practices legislation], we follow the usual rule in statutory interpretation that the difference between the state and federal acts was purposeful and is meaningful.
(Emphasis added.) Evening Sentinel v. National Organization forWomen, supra, 168 Conn. 34-35 n. 5 Therefore, this court finds that since the CFEPA, in contrast to Title VII or the ADEA, imposes liability on business entities with very small numbers of employees, there was no intent by the legislature to protect supervisory employees from individual liability. Id.
Further, the Tomka v. Seiler decision was also based partly on the fact that the only remedies provided for under Title VII prior to the 1991 Civil Rights Amendments were backpay and reinstatement. Tomka v. Seiler, supra, 66 F.3d 1314. The court reasoned that "[c]learly, backpay and reinstatement are most appropriately equitable remedies which are most appropriately provided by employers, defined in the traditional sense of the word," because not all supervisory employees are granted such authority. Id., 1314-15. The court was also concerned that, because the amount of damages that may be awarded for employment discrimination under Title VII depends on the number of persons CT Page 5307 employed by the employer, supervisory employees guilty of the same violations would not be exposed to the same potential liability.[2] Id., 1315-16 The court concluded that "[i]t is doubtful that such an anomalous result was contemplated by Congress . . ." Id., 1316.
In comparison to the limited remedies originally provided for under Title VII, the remedial provision of the CFEPA, which reads the same today as when originally enacted by the Legislature in P.A. 91-331, § 5, allows courts to "grant a complainant . . . such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorneys fees and court costs." General Statutes §46a-104. Therefore the remedial provision of the CFEPA, unlike the original remedial provisions of Title VII, provides the court with broad authority to formulate appropriate remedies and does not per se expose supervisory employees to greater liability merely because their principal employs a greater number of individuals than does another supervisory employee's principal.See Evening Sentinel v. National Organization for Women, supra,168 Conn. 34-35 n. 5. Therefore, the anomalous results cautioned against under the original remedial provisions of Title VII are not present under the CFEPA. General Statutes § 46a-104.
"The history of this mass of [anti-discrimination] legislation evidences a firm commitment not only to end discrimination against women, but to also do away withdiscrimination altogether." (Emphasis added.) Id., 34. Construing the remedial provision of the CFEPA to allow supervisory employees to be held individually liable is the only way we can meet such a strong commitment ensuring that each and every citizen of this state is treated equally. Id.
CONCLUSION
Based on the foregoing, the defendant's motion to dismiss counts three, four and eight is denied.
HURLEY, J.