[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISMISS (#104)
The plaintiff, Coutinho Caro and Co., filed a five-count complaint on December 15, 1995, against the defendant, Doolan Industries, Inc., for actions arising out of an agreement and a joint venture arrangement regarding the purchase and sale of steel. Coutinho is a Delaware corporation with its principle place of business located in Stamford, Connecticut. Doolan is a Delaware corporation with a principal place of business in Moorestown, New Jersey. The defendant filed a motion to dismiss on February 23, 1996, for lack of personal jurisdiction. The plaintiff filed a memorandum in opposition on March 19, 1996.
"A motion to dismiss. . . `properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.'" (Emphasis in the original.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). A motion to dismiss "does not seek to introduce facts outside of the record . . . and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." American Laundry Machinery, Inc. v.State, 190 Conn. 212, 217, 459 A.2d 1031 (1983).
The plaintiff alleges in its complaint and its memorandum that the defendant is subject to jurisdiction pursuant to Connecticut's long-arm statute, General Statutes § 33-411(c)(1) and (4).[1] The defendant argues that neither agreement was solicited, negotiated, CT Page 5256-NNNNN made or performed in Connecticut. As to the first agreement, the defendant argues, and provides support in the affidavit of Tim Stein, Executive Vice President of Doolan Industries, that the parties negotiated the agreement in New Jersey and finalized the terms in discussions over the telephone. Coutinho sent a confirmation letter to Doolan, but Doolan refused to sign the letter because there were materially different terms in the letter, and sent its own confirmation letter. The defendant argues that the second agreement was again negotiated in New Jersey, Coutinho prepared a written Consignment Agreement in Connecticut, signed and sent it to New Jersey where Doolan executives signed it and returned it to Connecticut.
The plaintiff argues, and provides support in an affidavit from John G. Forbes, General Manager of Finance and Administration for Coutinho Caro, that all of the actions regarding the two agreements occurred in Connecticut; placing orders, arranging for shipping, financing and insurance, handling customs clearance, terminal and warehouse arrangements. As to the first agreement, Forbes provides that Coutinho memorialized the agreement in a confirmation letter, and the return letter from Doolan was merely a purchase order. The joint venture agreement was implemented in Connecticut when Doolan sent a purchase order to Connecticut and Doolan wired money to Coutinho in Connecticut. The affidavit also provides that Doolan's president visited Coutinho in Connecticut.
The parties disagree on two facts. The plaintiff controverts the defendant's contention that there was a meeting in New Jersey to discuss the first agreement, and the plaintiff contends that the communication involving the first agreement sent from Coutinho to Doolan was merely a purchase order, not a confirmation letter.
The defendant argues that neither contract was made or performed in Connecticut. Both parties agree that in Connecticut a contract is considered made when and where the last thing necessary to create an effective agreement is done. ElectricRegulator v. Sterling Extruder, 280 F. Sup. 550, 555 (D. Conn. 1968). The defendant argues that when there is a confirmation, an agreement is made when and where the oral agreement is reached, not where the confirmation is made. Chemical Trading Inc. v.Manufacture de Products Cliniques de Tournan, 870 F. Sup. 21, 23
(D. Conn. 1994) (where plaintiff and defendant agreed to sale orally at trade show in Texas, confirmation telex sent from Stamford was not the last thing necessary to make agreement but merely confirmed existence of prior oral contract.) The defendant CT Page 5256-OOOOO concludes that the contract was made at the meeting in New Jersey. In the alternative, if the contract was not made there, the defendant argues that when an agreement is completed by a confirmation, it is considered made in the state from where the confirmation originated. Electric Regulator v. Sterling Extruder,
supra, 280 F. Sup. 555. According to the defendant, the confirmation letter sent by Coutinho was rejected, and Doolan sent its own confirmation letter.
The defendant then argues that the contract was not performed in Connecticut, because the court in Chemical Trading held that in contracts between merchants where goods are shipped between points outside of Connecticut, the plaintiff's administration of the contract is not considered performance in Connecticut. ChemicalTrading Inc. v. Manufacture de Products Cliniques de Tournan,
supra, 870 F. Sup. 23.
As to the joint venture agreement, a written agreement is made when and where it is fully executed. Coan v. Bell Atlantic,813 F. Sup. 929, 943 (D. Conn. 1990). The defendant argues that the agreement was fully executed when Doolan signed it in New Jersey. The contract was not performed in Connecticut because steel was shipped from and to remote locations.
The plaintiff counters that performance of both agreements occurred in Connecticut. The joint venture agreement resulted in an ongoing relationship in which Doolan would locate a customer for the steel, send a purchase order to Coutinho who would issue a release for the steel from Connecticut, and Doolan would pay Coutinho for the steel in Connecticut. The plaintiff points toTeleco Oilfield Services, Inc. v. Skandia Insurance Company Ltd.,656 F. Sup. 753 (D. Conn. 1987) in which a Connecticut plaintiff purchased insurance from a non-Connecticut defendant, paid premiums from Connecticut and received claim checks in Connecticut. The plaintiff distinguishes the Chemical Trading case by arguing that the defendant in that case was never present in Connecticut, and did not send any communications to Connecticut, telephone calls or payment. See also Clemco Corporation Inc. v. Frantz ManufacturingCo., 609 F. Sup. 56 (D. Conn. 1985) (Connecticut plaintiff contracted to act as sales representative in New England for non-Connecticut defendant); Bowman v. Grolsche Bierbrouwerij B.V.,474 F. Sup. 725 (D. Conn. 1979) (Connecticut plaintiff contracted with non-Connecticut defendant to market defendant's beer in the United States.) CT Page 5256-PPPPP
Furthermore, the plaintiff argues that the first agreement was made in Connecticut because there was no meeting in New Jersey, and the confirmation letter sent by Coutinho was the contract. The plaintiff argues that since "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." Electric Regulator Corporation v. SterlingExtruder Corporation, supra, 280 F. Supp. at 555, the agreement in question was not effective until the Statute of Frauds was satisfied, i.e. when Coutinho' confirmation letter was sent. See General Statutes § 42a-2-201 (2) and 107(1).
With respect to the joint venture it appears that the parties had a continuing relationship and that communications and payments were sent to the plaintiff in Connecticut by the defendant. The plaintiff does not argue that the contract was made in Connecticut, but rather that the contract was performed in Connecticut. The defendant sent purchase orders to Connecticut and paid the plaintiff in Connecticut. The court in Teleco Oilfield Services,Inc. v. Skandia Insurance Company Ltd., supra, 656 F. Sup. 757
comments that "there is no indication that the Connecticut legislative intended that the language `to be performed in the state' should be given a limited construction to require performance in the state by the party over whom jurisdiction is sought. It would not be appropriate therefore for this court to impose such a limitation upon the statute . . . . Teleco's payment of premiums from Connecticut constitutes actual and substantial performance of the terms of the contract with [the defendants]. Furthermore, if the Scandinavian Insurers had paid the disputed claim, which is the subject of the suit, Teleco would have received its claim check in Connecticut."
This court finds similarities in the instant case and applies the reasoning in Teleco to find the plaintiff does have jurisdiction over the defendant as to Count One as well as the joint venture in Count Two.
The plaintiff argues that the provisions under the Uniform Commercial Code dictate when and where the contract was made. The Statute of Frauds merely governs what contracts are enforceable, it does not purport to dictate when a contract is made. General Statutes § 42a-2-201. The other section cited by the defendant, General Statute 42a-2-207 is entitled "Addition terms in acceptance or confirmation." The comment states that the section is intended to deal with the situation in which an agreement has already been reached orally and formalized in a memoranda, or where there is an CT Page 5256-QQQQQ offer and acceptance, and it dictates what terms are part of the agreement. It does not apply to the current situation.
Count Five of the complaint is an action pursuant to the Connecticut Uniform Trade Practices Act, C.G.S. § 42-110b et seq.. The court finds that C.G.S. 33-411 (c)(4) gives this court jurisdiction over the CUTPA count. Only a single act of tortious conduct need be shown in order to invoke C.G.S. 33-411 (c)(4).Doyle v. St. Paul Fire and Marine Insurance Co., 583 F. Sup. 554,557 (D. Conn. 1984).
In Teleco Oilfield Services, Inc. v. Skandia Insurance Co.,Ltd., supra, 656 F. Sup. 757, 758, the court in finding that Scandinavian Insurers alleged tortious conduct occurred in Connecticut noted as follows:
 "First, the alleged failure to make payment is deemed to have occurred in Connecticut. Second, the defendants' reasonable explanation and communication of the legal basis for denial of coverage . . . . would have also been transmitted to Connecticut. And third, the alleged misrepresentations of coverage, both active and passive, would have been made by way of communications sent to and received by Teleco from the defendants in Connecticut."
As a motion to dismiss causes the court to construe the complaint most favorably to the plaintiff. American LaundryMachinery, Inc. v. State, 190 Conn. 212, 217, the court at this time needs not rule on the merits of the plaintiff's CUTPA claim.
Lastly, the court must determine whether the exercise of jurisdiction violates constitutional principles of due process, as embodies in the due process clause of the 14th Amendment to the United States Constitution. Frazer v. McGowan, 198 Conn. 243, 246,502 A.2d 905 (1986). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart, 197 Conn. 34, 41,495 A.2d 1034 (1985). The issue is whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]." Hanson v. Denckla, 357 U.S. 235,253 (1958) and whether it is foreseeable that it could be hailed into court in Connecticut. Doolan entered into a series of contracts with Coutinho, contracts which foresaw continued contracts; Doolan was sending purchase orders and payment to a Connecticut corporation; was communicating by telephone, letter and CT Page 5256-RRRRR fax with a Connecticut corporation; and the president visited Connecticut to discuss the contract. Therefore, the company could reasonably have expected to be hailed into court in Connecticut.
Accordingly, for the reasons set forth herein the Motion to Dismiss is denied.
ARNOLD, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 5256-AAAAAA